**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **SHRONNA WHIPPLE**<br>1033 Orange Avenue<br>Youngstown, Ohio 44502<br><br><br>   Plaintiff,<br><br>  v.<br><br>**CORECIVIC, INC.**<br>c/o Statutory Agent<br>CT 4400 Easton Commons Way,<br>Columbus, Ohio 43219<br><br>**CORECIVIC OF TENNESSEE,<br>LLC**<br>c/o Statutory Agent<br>CT Corporation System<br>4400 Easton Commons Way,<br>Suite 125<br>Columbus, Ohio 43219<br><br>and<br><br>**JOHN/JANE DOE NOS. 1-10**<br>*True Names and Addresses<br>Unknown*<br><br>   Defendants. | CASE NO. 25-CV-00496<br><br>JUDGE: BENITA Y. PEARSON<br><br><br>**AMENDED COMPLAINT**<br><br>**NEGLIGENCE, AND EMPLOYER<br>INTENTIONAL TORT PURSUANT TO<br>*O.R.C. 2745.01***<br><br>**JURY DEMAND ENDORSED HEREON**<br><br>**INSTRUCTIONS FOR SERVICE** |

Now comes Plaintiff, Shronna Whipple, by and through undersigned counsel, and for her Complaint hereby states as follows:

## PARTIES

1.      Plaintiff Shronna Whipple ("Whipple") is an individual who, at all times relevant to this Complaint, resided in Mahoning County, State of Ohio.

2.      Defendant Corecivic Inc. ("Corecivic") is Maryland corporation with its principal place of business located at 10 Burton Hills Boulevard, Nashville, Tennessee, 37215. Corecivic is a foreign corporation registered to conduct business in the State of Ohio. Further, Corecivic is a publicly traded company that owns, operates and/or controls private prisons and detention centers, including NEOCC. At all times relevant, Corecivic acted through its employees, agents, servants, employees, contractors, affiliated subsidiaries and/or entities and thus, vicarious liable for their actions.

3.      Defendant Corecivic of Tennessee, LLC ("CCA of Tennessee") is a Tennessee limited liability company which owned, operated, and/or controlled Corecivic and/or NEOCC. At all times relevant, CCA of Tennessee acted through its employees, agents, servants, employees, contractors, affiliated subsidiaries and/or entities and thus, vicarious liable for their actions

4.      Plaintiffs are informed and believe and thereon allege that the fictitiously named Defendants sued as John/Jane Does Nos. 1-10 (hereinafter referred to as "John/Jane Does1-10") are persons, partnerships or corporations whose identity could not be readily ascertained despite the exercise of due diligence, but whose conduct contributed to the injury of Plaintiff. Plaintiff will amend or supplement this Amended Complaint to allege the

2

true names and capacities of such fictitiously named Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over these claims pursuant to U.S.C. § 1332(a)(1) as the matter in controversy exceeds $75,000.00 and complete diversity of citizenship exists between the parties.

6.      Defendants herein are registered as foreign corporate entities doing business within the State of Ohio and each lists CT Corporation System 4440 Easton Commons Way, Suite 125 Columbus, Ohio, 43219 as their respective statutory agent to receive process within the State of Ohio.

7.      Defendants have derived substantial financial benefit by conducting business in the State of Ohio.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) on the grounds that some or all of the conduct at issue substantially occurred in the Northern District of Ohio.

## FACTUAL BACKGROUND

9.      Whipple restates and realleges each and every allegation contained above as if expressly rewritten herein.

10.     At all times material herein, Whipple was employed by CCA of Tennessee and/or Corecivic as a corrections officer at Northeast Ohio Corrections Center ("NEOCC").

11.     Defendants represent to the public that Corecivic provides its employees, who are employed to provide correctional services with work "in safe, secure facilities that provide high-quality services and effective reentry programs that enhance public safety."

12.     Defendants further represent to the public that "we keep our workplaces safe to protect everyone who lives, works or volunteers in or who visits our facilities."

13.     Whipple's duties included, but were not limited to, the supervision of inmates and residents in NEOCC's housing units.

14.     From the time Whipple began as a corrections officer at NEOCC to the date of the attack referenced herein and thereafter, NEOCC often operated without adequate staffing support.

15.     For example, facility-wide staffing and safety concerns in the Facility were documented in multiple reports by the Correctional Institution Inspection Committee ("CIIC").

16.     An April 2022 inspection report of the NEOCC, the Correctional Institution Inspection Committee generated a report that showed an 18.1% increase in inmates who reported being threatened or harassed by other inmates in the facility ("CIIC 2022 Report").

17.     The CIIC 2022 Report further noted that offenders were observed loitering in the hallways for extended periods of time.

18.     NEOCC's leadership blamed the design of the building for the loitering and congregation of offenders, stating that staff offices are located in hallways and offenders are waiting to be seen.

19.     The CIIC 2022 Report showed that NEOCC staff surveys were mostly negative with most staff expressing concerns regarding staff retention and communication.

20.     The CIIC 2022 Report showed that NEOCC staff rated the safety of the staff as "seldom" occurring.

21.    The CIIC 2022 Report showed that supervisory staff shared the same safety concerns as the subordinate staff.

22.    After a 2023 inspection of the NEOCC, the Correctional Institution Inspection Committee generated a report that showed an 43.4% increase in inmates who reported being threatened or harassed by other inmates in the facility ("CIIC 2023 Report).

23.    The CIIC 2023 Report showed that offenders were observed entering units and pods without proper assignment, and staff had to redirect those offenders to proper areas.

24.    The CIIC 2023 Report showed that executive staff failed to meet their monthly and weekly rounds and responsibilities for the two months prior to the inspection.

25.    The CIIC 2023 Report showed that NEOCC staff surveys were overwhelmingly negative with staff expressing concerns regarding staff retention and communication.

26.    The CIIC 2023 Report showed that NEOCC staff rated the safety of the staff as "seldom" occurring.

27.    The CIIC 2023 Report showed that staff rated the occurrence of policy and procedure being followed as "seldom".

28.    The CIIC 2023 Report showed that staff rated the occurrence of employee discipline consistency as "seldom".

29.    As part of NEOCC's policy, staff members at the facility are not to be isolated with inmates for extended periods of time.

30.    Despite these policies and well documented safety concerns, on or about February 8, 2024, Whipple and another female staff member, were isolated with three (3) male inmates, including Ronald Rendon-Luna ("Rendon-Luna").

31.    While Whipple and her fellow female staff member were isolated with the inmates,

5

Rendon-Luna became irate regarding an incident that occurred with another inmate at NEOCC.

32.     Without warning, Rendon-Luna suddenly and violently attacked Whipple and a fellow female staff member.

33.     Whipple attempted to call for backup to assist in stopping the violent attack.

34.     Despite Whipple's attempts to call for backup, Whipple's request for help were not timely answered.

35.     The above referenced failures allowed Rendon-Luna to continue his brutal attack on Whipple.

36.     As a direct and proximate result of the attack, Whipple suffered significant personal injuries, including, but not limited to a severe head injury, compression fracture of the cervical spine, cerebral concussion with loss of consciousness, and lumbar sprain.

## COUNT I
### (Negligence/Recklessness – Corecivic and CCA of Tennessee)

37.     Whipple restates and realleges each and every allegation contained above as if expressly rewritten herein.

38.     Corecivic and/or CCA of Tennessee owed Whipple, a duty to exercise ordinary care and to maintain a reasonably safe work environment.

39.     Further, Corecivic, and/or CCA of Tennessee owed Whipple a duty to refrain from conduct that would foreseeably harm Whipple.

40.     Corecivic, and/or CCA of Tennessee were negligent and/or reckless in that it breached the aforementioned duties owed to Whipple in that Corecivic and/or CCA of Tennessee failed to follow their own safety protocols, their own policy and procedures

6

manual, failing to adequately staff NEOCC, failed to train its agents, employees, contractors and/or servants and implement appropriate safety procedures, and failed to provide appropriate safety measures.

41. As a direct and proximate cause of Defendants' negligence and/or recklessness, Whipple suffered personal injuries, was required to seek medical care, suffered great pain of mind and body, incurred financial obligations, including economic loss, lost wages, as well as other injury, damage and loss, all of which will continue into the future.

42. Whipple's injuries are permanent in nature.

## COUNT II
### (Employer Intentional Tort – Corecivic and CCA of Tennessee)

43. Whipple restates and realleges each and every allegation contained above as if expressly rewritten herein.

44. At all times relevant herein, Defendants knew and/or were otherwise aware of site-wide staffing and safety concerns. Defendants' failure to follow safety protocols and to adequately staff NEOCC was done with the intent to injure the Plaintiff, or with knowledge that such conduct was substantially certain to cause injury to the Plaintiff.

45. Defendants knew and/or were otherwise aware that NEOCC was not adequately staffed, and that safety protocols, designed and intended to ensure employee safety, were violated, thereby greatly increasing the risk of employee injury to or beyond a substantial certainty.

46. Defendants knew and/or were otherwise aware that NEOCC was not properly staffed and that safety protocols were either not followed or were disregarded, thereby greatly increasing the risk of employee injury to or beyond a substantial certainty.

7

47.     As a direct and proximate cause of the statutory intentional tort committed by Corecivic, and/or CCA of Tennessee, the Plaintiff suffered great pain of mind and body, incurred financial obligations, including economic loss, lost wages, as well as other injury, damage and loss, all of which will continue into the future.

48.     Plaintiffs' injuries are permanent.

**<u>COUNT III</u>**
**(Negligence/Recklessness – John/Jane Does 1-10)**

49.     Whipple restates and realleges each and every allegation contained above as if expressly rewritten herein.

50.     John/Jane Does 1-10 owed Whipple a duty to exercise ordinary care and to maintain a reasonably safe work environment.

51.     Further, John/Jane Does 1-10 owed Whipple a duty to refrain from conduct that would foreseeably harm Whipple.

52.     John/Jane Does 1-10 was negligent and/or reckless in that it breached the aforementioned duties owed to Whipple in that John/Jane Does 1-10 failed to follow their own safety protocols, their own policy and procedures manual, failing to adequately staff the Facility, failed to train its agents, employees, contractors and/or servants and implement appropriate safety procedures, and failed to provide appropriate safety measures.

53.     As a direct and proximate cause of John/Jane Does 1-10's negligence and/or recklessness, Whipple suffered personal injuries, was required to seek medical care, suffered great pain of mind and body, incurred financial obligations, including economic loss, lost wages, as well as other injury, damage and loss, all of which will continue into

the future.

54.     Whipple's injuries are permanent in nature.

        **WHEREFORE**, Whipple demands judgment against the Defendants jointly and

severally, as follows:

        A.     Compensatory damages in an amount in excess of $75,000.00;

        B.     Pre-judgment interest to the maximum extent provided by applicable

               law;

        C.     Post-judgment interest;

        B.     Punitive damages;

        C.     Costs of this action; and

        D.     Any other remedies this Court deems equitable and just.

                              Respectfully submitted,
                              **BETRAS KOPP, LLC**


                               */s/ Frank L. Cassese*
                              Frank L. Cassese (0092991)
                              James N. Melfi (0098986)
                              Canfield, Ohio 44406
                              Telephone: (330) 746-8484
                              Facsimile: (330) 702-8280
                              Email: fcassese@bk-laws.com
                                     jmelfi@bk-laws.com
                              *Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Whipple demands a trial by jury on all claims so triable.

                              */s/ Frank L. Cassese*
                              FRANK L. CASSESE
                              JAMES N. MELFI
                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that that on the 27th day of May 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notice of filing to all counsel of record.

                              */s/ Frank L. Cassese*
                              FRANK L. CASSESE
                              JAMES N. MELFI
                              *Attorneys for Plaintiff*

10